UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DONALD F. CATALANO, | ) | Case No. 6:13-bk-01417-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OPINION DENYING DEBTOR'S MOTION TO STRIP LIEN

Debtor, Donald F. Catalano, seeks to strip off wholly unsecured junior liens attached to his home in Sanford, Florida (the "Property").[1]  Although stripping off wholly unsecured junior mortgages is now permitted in a Chapter 7 case pursuant to the Eleventh Circuit's decision in *In re McNeal*,[2] the circumstances in this case are not typical.  Here, although the value of the Property and encumbrances are not in dispute,[3] a certificate of sale was issued post-discharge in favor of a wholly unsecured junior lienholder, Lake Forest Master Community Association, Inc. (the "Association").  The issue is whether a valid certificate of sale cuts off a Debtor's ability to strip off a wholly unsecured junior lien under *McNeal*.  The Court now holds that the Certificate of Sale prevents the Debtor from stripping off the lien and, as such, denies the Motion.

The facts are undisputed:

---

[1] The Property is located at 4981 Maple Glen Place, Sanford, FL 32771. The legal description of the property is: LOT 366, LAKE FOREST SECION 11A, ACCORDING TO THE PLAT RECORDED IN PLAT BOOK 54, PAGE(S) 53-53, AS RECORDED IN THE PUBLIC RECORDS OF SEMINOLE COUNTY, FLORIDA.
[2] 477 F. App'x 562 (11th Cir. 2012).
[3] The Property is encumbered by four encumbrances: (i) a first mortgage executed in favor of EquiFirst Corporation, (ii) a second mortgage executed in favor of Jimmy and Patricia Ross, (iii) a lien recorded in favor of the Association for unpaid pre-petition homeowners' associations fees, and (iv) a financing statement form executed in favor of Aqua Finance, Inc. (Doc. Nos. 1 and 13.)  According to the Debtor, the amount due on the first mortgage is $628,138, and the value of the property is $457,332 (Doc. No. 13).  As such, only the first mortgage is secured by the value of the property.  The Association does not dispute that there is not enough equity in the property to provide for payment of its lien.

- <u>January 4, 2013</u>: The Association obtained a Summary Final Judgment of Foreclosure in County Court,[4] which scheduled a foreclosure sale on February 6, 2013.[5]

- <u>February 6, 2013</u>: Debtor filed his voluntary Chapter 7 petition, effectively stopping the original foreclosure sale.[6] Debtor indicated on his Statement of Intentions he planned to retain the Property and to continue paying all creditors with a security interest in the Property "after successful modification."[7]

- <u>May 21, 2013</u>: Debtor received a discharge, and the case was closed.[8]

- <u>July 10, 2013</u>: After the Debtor's case was closed, the Association proceeded to enforce its *in rem* rights and filed a Motion to Reschedule Foreclosure Sale in the County Court.[9] The County Court rescheduled the foreclosure sale for August 20, 2013.[10]

- <u>July 29, 2013</u>: The foreclosure sale was noticed for August 20, 2013, at 11:00 a.m.[11]

- <u>August 20, 2013 at 8:10 a.m.</u>: Debtor filed in the closed Chapter 7 bankruptcy case his Motion to Determine Secured Status of Jimmy and Patricia Ross, Lake Forest Master Community Association, Inc., and Aqua Finance, Inc. and to Strip Lien Effective Upon Discharge (the "Motion to Strip").[12]

- <u>August 20, 2013 at 11:00 a.m.</u>: The foreclosure sale took place at which the Association purchased the Property for $100.00.[13]

---

[4] All reference to the County Court refers to the County Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida.
[5] Association's Exhibit 1.
[6] Doc. No. 1.
[7] Doc. No. 1.
[8] Doc. No. 12.
[9] Association's Exhibit 2.
[10] Association's Exhibit 3.
[11] Association's Exhibit 4. The foreclosure sale was also noticed by publication in the Winter Park/Maitland Observer newspaper. (Association's Exhibit 6.)
[12] Doc. No. 13.
[13] Association's Ex. No. 7.

- August 20, 2013 at 12:44 p.m.: Debtor filed his Motion to Reopen Chapter 7 Case (the "Motion to Reopen").[14]

- August 20, 2013 at 3:17 p.m.: A Certificate of Sale was issued in favor of the Association.[15] The Debtor's Chapter 7 case remained closed, and no automatic stay was in effect at the time of the foreclosure sale and the issuance of the Certificate of Sale.

- August 28, 2013: The Debtor filed his Objection to Sale in County Court on August 28, 2013, asserting he did not receive proper notice of the rescheduled foreclosure sale and arguing the County Court should not issue the Certificate of Title until this Court ruled on the Debtor's Motion to Strip and the Debtor's Motion to Reopen.[16] The County Court has taken no action on the Debtor's Objection to Sale.

- November 26, 2013: This Court reopened the Debtor's case to determine whether it can strip the Association's wholly unsecured junior lien.[17]

Debtor now moves to strip[18] the Association's lien under § 506 of the Bankruptcy Code[19] pursuant to Eleventh Circuit Court of Appeals' holding in *In re McNeal*.[20] The Association concedes its junior lien is wholly unsecured and otherwise would be subject to stripping off, but for one fatal fact: the Debtor lost any right to the Property upon the issuance of the Certificate of Sale.[21] Debtor argues his interest in the Property is lost only after issuance of a *Certificate of Title*, not the Certificate of Sale, and the Court's ability to strip the lien is the same as if the request had made before the foreclosure sale had occurred.

Florida's judicial foreclosure procedures, set forth in Section 45.031 of the Florida Statutes, authorize the sale of real property at public auction pursuant to a final judgment of

---

[14] Doc. No. 14.
[15] Association's Exhibit 7.
[16] Association's Exhibit 8.
[17] Doc. No. 21.
[18] Doc. No. 13.
[19] All references to the Bankruptcy Code or the Code refer to 11 U.S.C. Section 101, *et. seq.*
[20] 477 F. App'x at 562 (11th Cir. 2012).
[21] Doc. No. 17.

foreclosure.[22] After proper notice, a sale is conducted at which a certificate of sale is issued to the highest bidder.[23] "If no objections to the sale are filed within 10 days after filing the certificate of sale, the clerk shall file a certificate of title and serve a copy of it on each party … ."[24] Title to the property passes to the purchaser when the certificate of title is filed and "the sale shall stand confirmed."[25] Section 45.031 of the Florida Statutes explicitly empowers a court in the final judgment of foreclosure to fix the time in which the mortgagor may redeem.[26] Where the judgment is silent on redemption, the mortgagor's redemptive rights are lost upon the clerk's filing of a certificate of sale.[27]

Paragraph 8 of the Summary Final Judgment provides: "On filing the certificate of sale, Defendant, and all persons claiming under or against him since the filing of the notice of Lis Pendens, are foreclosed of all estate or claim in the property and the purchaser at the sale shall be let into possession of the property."[28] The Certificate of Sale was issued to the Association, but no certificate of title was issued because the Debtor timely filed an Objection to Sale.[29] The extent of the Debtor's interest in the Property after the Certificate of Sale but before the issuance of a certificate of title determines the Court's authority to strip the Association's lien.

Under normal circumstances, wholly unsecured junior liens surviving discharge may be subsequently stripped off if a Chapter 7 debtor reopens his or her case and files a motion to strip off such liens.[30]   However, such liens must be stripped off *before* a debtor loses his or her equitable interests in the real property.[31]   Section 506(d) of the Code cannot be used to avoid a

---

[22] Fla. Stat. § 45.031 (2014).
[23] Fla. Stat. §§ 45.031(2), (5) (2014).
[24] Fla. Stat. § 45.031(5) (2014).
[25] Fla. Stat. § 45.031(6) (2014).
[26] Fla. Stat. § 45.0315 (2014).
[27] Fla. Stat. § 45.0315 (2014); *See Emanuel v. Bankers Trust Co., N.A.*, 655 So. 2d 247, 249 (Fla. 5th DCA 1995).
[28] Association's Exhibit 1.
[29] Association's Exhibit 8.
[30] *See generally In re McNeal,* 477 F. App'x 562 (11th Cir. 2012).
[31] *See generally In re Aliu-Otokiti* 6:12-BK-14850-ABB, 2013 WL 1163782 (Bankr. M.D. Fla. Mar. 19, 2013); *In re Almeida* 6:12-BK-12965-ABB, 2013 WL 1163777 (Bankr. M.D. Fla. Mar. 18, 2013); *In re Bustamante* 6:12-bk-12877-KSJ, 2013 WL 1110886 (Bankr. M.D. Fla. Mar. 15, 2013).

lien on property which is not property of the estate.[32] "Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title."[33] This proposition has not been explicitly discussed with respect to lien stripping in Chapter 7 cases, although it has been addressed extensively in the Chapter 13 and Chapter 11 contexts. In those circumstances, the issuance of the certificate of sale cuts off a debtor's rights in the collateral. As examined below, it does so in Chapter 7 as well.

Similar to the instant case, the debtor's property in *In re Jaar* was sold and a certificate of sale issued by the Clerk of the Circuit Court reflecting the sale of the property to a creditor prior to the debtor filing her voluntary Chapter 13 petition.[34] The question in the case was whether the debtor's right to cure the default and reinstate the mortgage terminated as a result of the status of the foreclosure proceeding.[35] In *Jaar*, the court found the mortgagor's/debtor's right of redemption expired with the filing of the certificate of sale; further, the court held that an objection to sale filed before the certificate of title was issued did not affect or cloud the title of the purchase in any manner.[36] The court went on to hold that a certificate of sale must be set aside for the mortgagor/debtor to have any right to acquire the property.[37]  The debtor was not permitted to cure and reinstate or redeem the mortgage through a Chapter 13 plan.[38]

The bankruptcy court in *In re Hand* also found the filing of the certificate of sale determinative of the debtors' interest in and right to certain real property.[39] There, the court found that filing of the certificate of sale terminated the debtors' right of redemption and

---

[32] *In re Israel*, 112 B.R. 481, 485 (Bankr. D. Conn. 1990).
[33] *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.8, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983) (*citing* 124 Cong. Rec. 32399, 32417 (1978) (remarks of Rep. Edwards)).
[34] *In re Jaar*, 186 B.R. 148, 149 (Bankr. M.D. Fla. 1995).
[35] *Id.*
[36] *See id.* at 153-54.
[37] *Id.*
[38] *Id* at 154-55.
[39] *In re Hand*, 52 B.R. 65, 66 (Bankr. M.D. Fla. 1985).

extinguished their interest in the property such that the right to redeem was no longer part of the estate.[40]

Conversely, in *In re Sarasota Land Co.*, the bankruptcy court found a Chapter 11 debtor's right of redemption was included in the bankruptcy estate pursuant to § 541 of the Code where the debtor's real property was sold at a foreclosure sale, but the right of redemption had not been extinguished.[41] Importantly, however, at the time *In re Sarasota Land Co.* was decided, the Florida statutory right of redemption terminated upon issuance of the certificate of title, *not* the certificate of sale.[42]

The bankruptcy courts in the abovementioned cases found it necessary for a debtor to have a right to redeem real property in order to take advantage of Bankruptcy Code provisions to use or possess the real property or to otherwise alter a creditor's interest in the real property. Here, the Debtor lost his right to redeem the Property when the Certificate of Sale was issued to the Association. Without the equitable right of redemption, the Debtor has no ability to strip the liens attached to the Property. Debtor could have requested the relief he now seeks during the pendency of the Chapter 7 case or at any time after the Debtor's discharge up until the issuance of the Certificate of Sale. He simply failed to timely act to preserve his interest in the Property.

Although the Debtor timely objected to the foreclosure sale, the Objection to Sale does not serve to extend or to preserve his right of redemption. Objections may be made to the regularity of the sale or the amount of the deficiency, but, after the filing of the certificate of sale, the mortgagor no longer has the ability to redeem the property. Any objection to the sale does

---

[40] *Id.*
[41] *In re Sarasota Land Co.,* 36 B.R. 563, 565-66 (Bankr. M.D. Fla. 1983).
[42] Florida Legislature amended the statutory right of redemption in 1993, to specifically provide that the right to redeem terminates with the filing of the certificate of sale, unless the foreclosure judgment specifies a later time.

not affect or cloud the title of the purchaser in any manner.[43] The issuance of the certificate of title is merely a ministerial act required to complete the formal transfer of legal title.[44]

The substance of an objection to a foreclosure sale under Section 45.031(5) must be directed toward conduct that occurred at, or which related to, the foreclosure sale itself. The purpose of allowing an objection to a foreclosure sale "is to afford a mechanism to assure all parties and bidders to the sale that there is no irregularity at the auction or any collusive bidding, etc."[45]

In his Objection to Sale, the Debtor asserts he did not have notice of the sale as required by the applicable statute.[46] Failure to provide adequate notice of a judicial sale may provide cause for setting aside the sale and not issuing the certificate of title.[47]  Denial of receipt of notice creates a question of fact, which requires an evidentiary hearing more appropriately conducted by the County Court under whose supervision the sale was conducted.[48]

The County Court has the blessing of this Court to resolve the Debtor's pending Objection to Sale.  But, given the issuance of the Certificate of Sale, the Debtor has lost any interest in the Property and has forfeited his ability to strip off wholly unsecured liens.  The Motion to Strip is denied without prejudice.  In the event the Certificate of Sale is vacated, the Debtor may renew his request for relief under § 506 of the Bankruptcy Code.  The Court will enter a separate order consistent with the Memorandum Opinion.

DONE AND ORDERED in Orlando, Florida, June 5, 2014.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[43] *In re Jaar*, 186 B.R. 148, 153-54 (Bankr. M.D. Fla. 1995).
[44] *In re Sarasota Land Co.*, 36 B.R. 563, 566 (Bankr. M.D. Fla. 1983).
[45] *Id.* at 250.
[46] Association's Exhibit 8.
[47] *Bennett v. Ward,* 667 So. 2d 378, 382 (Fla. 1st DCA 1995).
[48] *Liberty Mut. Ins. Co. v. Lyons*, 622 So. 2d 621 (Fla. 5th DCA 1993); *In re Jaar*, 186 B.R. at 154 n.8.

Attorney Robyn Marie Severs is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.